### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ROBERT MINCEY,** | : | **DOCKET NO. 14-cv-782** |
| **a/k/a ROBERT BRYANT** | | |
| **D.O.C. # 530514** | : | |
| | | **JUDGE MINALDI** |
| **VERSUS** | : | |
| | | |
| **N. BURL CAIN, WARDEN** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is a pro se application for a writ of habeas corpus pursuant to 28 U.S.C § 2254, filed by Robert Mincey ("petitioner") [doc 1]. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at the Louisiana State Penitentiary at Angola. N. Burl Cain ("respondent"), warden, has responded [doc. 15].

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

### I.
### BACKGROUND

#### A. *Conviction*

The petitioner was indicted on a charge of second degree murder in the 14th Judicial District, Calcasieu Parish, Louisiana. Doc. 15, att. 3, p. 8. The charge related to the shooting death of Jerome Dejean at a night club in Lake Charles, Louisiana. *State v. Mincey*, 14 So.3d 613, 614

(La. Ct. App. 3d Cir. 2009). On October 26, 2007, the petitioner was convicted by jury on a vote of 10-2 of the lesser included offense of manslaughter. Doc. 15, att. 3, p. 29.

The state filed a habitual offender bill. *Id.* at 33. After a hearing on the issue, the trial court determined that the petitioner was a habitual offender (second offense). *Id.* It then sentenced the petitioner to 50 years imprisonment without the benefit of probation, parole, or suspension of sentence, and with no credit for good time. *Id.* at 34; Doc. 15, att. 7, p. 11.

### B.  *Direct Appeal*

The petitioner then appealed his conviction and sentence to the Louisiana Third Circuit Court of Appeal. *Mincey*, 14 So.3d at 614. He claimed that the evidence was insufficient to support his conviction because the state failed to disprove that he acted in self-defense and that his sentence was excessive. *Id.*; *State v. Mincey*, 12 So.3d 1105, 1105–06 (La. Ct. App. 3d Cir. 2009).  The Third Circuit denied the first claim on the merits and affirmed his conviction based on the sufficiency of evidence. *Mincey*, 14 So.3d at 616. In a separate opinion, also issued on June 3, 2009, it disagreed that the length of the sentence was excessive but amended the petitioner's sentence based on the trial court's lack of authority to deny him eligibility for parole. *Mincey*, 12 So.3d at 1107–08.

The petitioner then sought review in the Louisiana Supreme Court. The Louisiana Supreme Court ruled on April 5, 2010, granting the writ in part only to delete the sentencing language relating to good time. *State v. Mincey*, 32 So.3d 219 (La. 2010). The petitioner did not file a petition for certiorari in the United States Supreme Court. Doc. 1, p. 2.

### C.  State Collateral Review and Federal Habeas Petition

On March 7, 2011,[1] the petitioner filed an application for post-conviction relief with the trial court. Doc. 1, att. 3, pp. 13–45; Doc. 1, att. 4, pp. 1–5. He raised the following claims for relief:

1.      The petitioner's constitutional rights were violated when he was denied the opportunity to testify.

2.      The petitioner's right to effective assistance of counsel was denied when his trial counsel failed to protect his right to testify, present a defense, and have compulsory process for obtaining witnesses on his behalf.

3.      The petitioner's conviction was unconstitutional due to the allowance of non-unanimous verdicts in non-capital felony cases under LA. C. CRIM. P. art. 782(A).

4.      The petitioner received an illegal sentence under the former provisions of the habitual offender law.

5.      The trial court erred in admitting prejudicial telephone recordings into evidence.

6.      The cumulative effect of these errors denied the petitioner his right to a fundamentally fair adversarial proceeding.

Doc. 1, att. 3, pp. 23–24.  Following two evidentiary hearings, the trial court denied the application. Doc. 15, att. 10, p. 155; Doc. 1, att. 4, pp. 16, 20.  Petitioner then sought review in the Third Circuit which denied all claims on the merits. Doc. 1, att. 4, p. 32.  Finally the petitioner sought review in the Louisiana Supreme Court, which denied same on February 14, 2014. *Id.* at 34.

Petitioner then filed the instant petition on April 8, 2014. Doc. 1. In it he renews all claims from his state application for post-conviction relief as well as his sufficiency of evidence claim from his direct appeal, alleging that:

1.      The evidence at trial was insufficient to support the conviction.

---

[1] The respondent dates the application from its filing with the 14th Judicial District on March 10, 2011. Doc. 15, att. 1, p. 12. A habeas petition by a pro se inmate is considered filed, for the purposes of judging its timeliness *infra*, when the inmate delivers the papers to prison authorities for submission. *Spotsville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998). Mincey's petition indicates that it was submitted to the inmate mailing system on March 7, 2011. Doc. 1, att. 4, p. 3. Therefore March 7 is the effective date of filing.

2.     The petitioner's constitutional rights were violated when he was denied the opportunity to testify.

3.     The petitioner's right to effective assistance of counsel was denied when his trial counsel failed to protect his right to testify, present a defense, and have compulsory process for obtaining witnesses on his behalf.

4.     The petitioner's conviction was unconstitutional due to the allowance of non-unanimous verdicts in non-capital felony cases under LA. C. CRIM. P. art. 782(A).

5.     The petitioner received an illegal sentence under the former provisions of the habitual offender law.

6.     The trial court erred in admitting prejudicial telephone recordings into evidence.

7.     The cumulative effect of these errors denied the petitioner his right to a fundamentally fair adversarial proceeding.

Doc. 1, att. 2, pp. 14–15.

## II.
## LEGAL STANDARDS ON HABEAS REVIEW

### A.  Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n.1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and

the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. Procedural Default and Exhaustion of State Court Remedies

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

#### 1. Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d

699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2.  *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which

he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C. General Principles

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary]

result . . . ." *Bell v. Cone*, 543 U.S. 447, 452-53 (2005), quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

### III.
### LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

#### A. *Timeliness*

Here the petitioner's conviction became final ninety days after the judgment of the Louisiana Supreme Court, when his time for seeking review by the United States Supreme Court expired. *See* Sup. Ct. R. 13. Therefore the one year limit for filing this petition began to run on **July 5, 2010**.[2] It was suspended by the filing of his application for post-conviction relief with the trial court on **March 7, 2011**, after **245 days** had run. Lastly, an additional **53 days** accrued

---

[2] The ninety-day period actually ended on July 4, 2010. However, terminating dates that are legal holidays are excluded. FED. R. CIV. P. 6(a)(1)(C); *see Union Nat. Bank of Wichita, Kan. v. Lamb*, 69 S.Ct. 911, 912–13 (1949) (applying FED. R. CIV. P. 6 to computation of time for filing a writ of certiorari).

between denial of review by the Louisiana Supreme Court on **February 14, 2014**, and filing of the instant application on **April 8, 2014**. Therefore a total of **298 days** were counted against § 2244(d)'s one-year time limit, meaning that the application is timely.

### B. Exhaustion of State Court Remedies and Procedural Default

#### 1. Exhaustion of state court remedies

A review of the petitioner's filings to the state courts reveals that all claims raised in the instant petition were properly presented to the trial court, the court of appeal, and the state supreme court. Therefore state court remedies have been exhausted for all claims.

#### 2. Procedural default

The respondent contends that the fourth (non-unanimous verdict), fifth (illegal sentence), and sixth (admission of telephone calls) claims in the instant petition are procedurally barred.[3] The state court judgments reveal that all claims were adjudicated on the merits by the Third Circuit, as the last court to render a judgment on direct appeal and collateral review. Doc. 1, att. 4, p. 32.

The respondent maintains that the fourth and fifth claims are procedurally defaulted under state law because of principles barring federal courts from reviewing state court interpretations of state law. Doc. 15, att. 1, pp. 40–42, 44–45. It is true that the presumption of adequacy in habeas review extends to state substantive rules as well as state procedural rules. *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995). However, a procedural default of an exhausted claim is, as the name

---

[3] The Third Circuit's ruling on these claims reads:

> The constitutionality of the non-unanimous jury verdict authorized by LA. C. CR. P. art. 782 has been upheld by the Louisiana Supreme Court. [case law citation omitted]. Thus, relator fails to prove his claim that LA. C. CR. P. art. 782(A) is unconstitutional.
>
> Additionally, Relator fails to prove that the trial court was unauthorized to impose his habitual offender sentence at hard labor. Since relator's underlying offense of manslaughter is punishable at hard labor, the trial court did not err in imposing Relator's habitual sentence at hard labor. [case law citation omitted].
>
> In all other respects, Relator fails to satisfy his burden of proving that relief should be granted. LA. C. CR. P. Art. 930.2.

Doc. 1, att. 4, p. 32.

suggests, limited to cases where the state court's dismissal of the claim is based "on a state **procedural** rule." *Coleman v. Dretke*, 395 F.3d 216, 220 (5th Cir. 2004) (emphasis added). Therefore, state substantive grounds supporting the judgment will raise jurisdictional considerations for us *infra* if we find them to be independent of the federal question presented. *Coleman v. Thompson*, 111 S.Ct. 2546, 2553–54 (1991). However, they cannot serve as a bar to considering the claims under the doctrine of procedural default.

The respondent also argues that these claim are barred under LA. C. CR. P. arts. 841 and 930.3, which respectively set forth the requirement of a contemporaneous objection and the exclusive grounds for granting post-conviction relief. However, there is no indication that the Third Circuit applied these rules. Accordingly, they cannot be considered by this court as a basis for procedurally defaulting the claim. *Harris v. Reed*, 109 S.Ct. at 1043.

Lastly the respondent contends that the Third Circuit's ruling on the sixth claim, citing LA. C. CRIM. P. art. 930.2,[4] is based on procedural grounds. In order to determine the basis of a ruling, this circuit looks to: (1) what the state courts have done in similar cases; (2) whether the history of the case indicates that the court was aware of any ground for not deciding the case on the merits; and (3) whether the state courts' opinions suggest reliance on procedural grounds rather than a decision on the merits. *Mercadel v. Cain*, 179 F.3d 271, 274 (5th Cir. 1999).

The respondent points out that Article 930.2 has been cited by the Louisiana courts in cases "where the petitioner has failed to carry his burden on the merits and where the petitioner has failed to meet his burden on some procedural point." *Woodfox v. Cain*, 772 F.3d 358, 371 n. 67 (5th Cir. 2014). However, the only decision cited in *Woodfox* to support Article 930.2's use as a procedural bar specifically mentioned that the relator had not met his burden of proof under Article 930.2

---

[4] Article 930.2 states that "[t]he petitioner in an application for post-conviction relief shall have the burden of proving that relief should be granted."

because his application was untimely. *State v. Russell*, 887 So.2d 462 (La. 2004). The state objected to this claim under LA. C. CR. P. art. 930.4(C), which bars consideration of claims that the petitioner raised in the trial court and failed to pursue on appeal. Doc. 15, att. 10, pp. 153; Doc. 15, att. 11, pp. 229–32. At one of the evidentiary hearings, the trial court also questioned whether the claim could be considered in an application for post-conviction relief, but based its hesitation on whether it was a constitutional issue. Doc. 15, att. 11, pp. 119–20. Accordingly, the respondent alleges that the Third Circuit was aware of grounds for applying a procedural default, even though neither of these was raised under Article 930.2. Turning to the opinion, the Third Circuit noted only that the petitioner had "[failed] to satisfy his burden of proving relief should be granted." Doc. 1, att. 4, p. 32. It cited no procedural deficiency in the application.

Thus the only apparent procedural bars before the court would have been best expressed through a citation to Article 930.4(C) or Article 930.3, which covers the types of claims reviewable in an application for post-conviction relief. Because no additional grounds were provided, it appears that Article 930.2 was cited by the Third Circuit to express its finding that the petitioner failed to meet his burden of proof on the merits. Accordingly, there is no basis for holding that claim or any of the other renewed in the instant petition as procedurally defaulted.

### C.  *Substantive Analysis*

Having determined that all claims are timely, exhausted, and not subject to procedural default, this court now considers each one by first ascertaining the appropriate standard of review and then applying that standard to the merits of the argument.

### 1. The evidence at trial was insufficient to support the conviction.

The petitioner alleges that the evidence presented at trial was insufficient to support his conviction. A sufficiency of evidence claim is a mixed question of law and fact. *Hernandez v. Warden, LA State Penitentiary*, 2014 WL 2169128, *9 (W.D. La. May 23, 2014).

A defendant's constitutional right to due process is violated when he is convicted of a crime without the state having met its burden of proof on every element of the offense. *Jackson v. Virginia*, 99 S.Ct. 2781, 2787 (1979) (citing *In re Winship*, 90 S.Ct. 1068, 1073 (1970)). Such claims are decided by determining whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000) (internal quotations omitted).

Under Louisiana law, a homicide is justified if "committed in self-defense by one who reasonably believes that he is imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." LA. REV. STAT. § 14:20(A)(1). When a defendant claims self-defense, it is the state's burden to disprove this element beyond a reasonable doubt. *State v. Richards*, 956 So.2d 160, 170 (La. Ct. App. 3d Cir. 2007). Here the petitioner claims that he committed the killing only because he was involved in an altercation with the victim and two others in which he had no opportunity to escape. Doc. 1, att. 2, p. 17. Accordingly, he contends that the evidence was insufficient to sustain his conviction of manslaughter because the state failed to refute his claim of self-defense.

At trial it was established that the victim had a blood alcohol level of .13 at the time of his death. Doc. 15, att. 5, p. 135. The petitioner's mother and sister, who had both been with the

petitioner at the nightclub where the altercation began, testified for the defense.[5] The petitioner's mother, Tracy Bryant, stated that the petitioner had gone to the restroom and then come back to her expressing a desire to leave.  Doc. 15, att. 6, p. 40. When she followed her son outside the club she saw him involved in a verbal altercation with two other men. *Id.* at 43–45. She stated that these men were then joined by the victim, and the three stood facing the petitioner who had his back to the wall of the club. *Id.* at 46.

Bryant alleged that the petitioner continued to apologize for bumping into the victim and, when the three showed no indication of accepting the apology, the petitioner placed his hand on his pistol. *Id.* at 47–48. At that time, Bryant testified, she moved between the victim and the petitioner, facing the victim, while one of the victim's friends showed the petitioner that he also had a weapon and both friends kept urging the victim to fight the petitioner. *Id.* at 49–50. Bryant then began to address the petitioner, attempting to defuse the situation. *Id.* at 50–52. She stated that the petitioner reacted angrily when the victim pushed her hand away. *Id.* at 90–91. She also stated that the victim's friends continued to egg him on until he raised his hand to hit the petitioner. *Id.* at 52–53. At this point, she said, the petitioner shot the victim. *Id.* at 53–54. However, Bryant admitted to lying to the police in two prior interviews based on concerns about being on probation and losing custody of her grandchildren, and stated that only her third statement was truthful. *Id.* at 58–59, 72–76, 95.

---

[5] The petitioner's sister, Nashayla Norman, stated that she saw the petitioner leave the club, followed by two other men and her mother. Doc. 15, att. 6, p. 19. When she exited the club a short time later, she saw her mother attempting to defuse the situation by addressing the victim. *Id.* at 19, 22. At that time, she testified, the petitioner's back was to the wall of the club and the victim was standing in front of him with at least one other man. *Id.* at 21–22. Shortly thereafter she heard a gunshot. *Id.* at 19. The state elicited testimony on the fact that there had been loud dance music playing from the club and that Norman was standing by the entrance when she allegedly heard her mother pleading with the victim. *Id.* at 24–26. Norman also admitted that she lied to the police when questioned about the shooting the following morning. *Id.* at 29–31.

The state introduced testimony from the victim's two friends who had been involved in the altercation, Kevin Doucet and Phillip Jones. Jones testified that the altercation began when the petitioner bumped into the victim twice inside the club. Doc. 15, att. 5, pp. 203–04. Both Doucet and Jones testified that they went outside at the petitioner's beckoning and that the petitioner indicated by placing his hand on his waistband that he was armed.[6] *Id.* at 155–56, 203–04. They stated that the victim then joined them and that the petitioner shot him. *Id.* at 158, 205. They also maintained that Bryant did not intervene until after the shot had been fired.[7] *Id.* at 158–59, 206. They denied that anyone had attempted to hit the petitioner and stated that they had not been armed. *Id.* at 162, 164, 187, 233.

The jury has broad discretion, as trier of fact, to resolve conflicts in testimony. *Green v. Johnson*, 160 F.3d 1029, 1047 (5th Cir. 1998). Here there were several conflicts on matters relevant to the perceived threat to the petitioner. The jury apparently found the state's witnesses more persuasive on the ultimate issue of whether the petitioner felt sufficiently threatened to justify the use of deadly force.

Viewing the evidence in the light most favorable to the prosecution, there is no reason to overturn this finding. Therefore this claim offers no basis for federal habeas relief.

### 2. *The petitioner's constitutional rights were violated when he was denied the right to testify at trial.*

The right of a defendant to testify on his own behalf in a criminal trial is "essential to due process of law in a fair adversary process." *Rock v. Arkansas*, 107 S.Ct. 2704, 2708–09 (1987). This right is personal to the defendant and may not be waived by his attorney. *Jordan v. Hargett*,

---

[6] Doucet and Jones both indicated that the petitioner was standing with his back to the wall, but that the victim, Doucet, and Jones were not standing directly in front of him. Doc. 15, att. 5, pp. 181, 205.

[7] Ashley Garcia, the victim's fiancée, recalled hearing a woman say, "Y'all don't do this," but testified that she could not recall whether the woman had placed her hand on the victim. Doc. 15, att. 5, pp. 247, 263. However, Jones stated that Garcia was standing in a different spot, indicating that she might have heard things he did not. *Id.* at 236–37.

34 F.3d 310, 312 (5th Cir. 1994), *vacated on other grounds*, 53 F.3d 94 (5th Cir. 1995). Claims that counsel unconstitutionally interfered with a defendant's right to testify are reviewed under the same standard as claims of ineffective assistance of counsel. *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007). Accordingly, this claim is a mixed question of law and fact. *Ward v. Dretke*, 420 F.3d 479, 486 (5th Cir. 2005).

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. *Id.* at 2064. This standard does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). The resulting prejudice must also be so great that it creates a substantial likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011). A petitioner must meet both of *Strickland*'s prongs in order to show a basis for federal habeas relief. *Id.*

Here the petitioner claims that his trial counsel, Robert Michael McHale, prevented him from taking the stand. Testimony was elicited on this issue at one of the trial court's evidentiary hearings on the application for post-conviction relief. McHale stated that he did not refuse to let the petitioner testify but instead advised him against it based on his criminal history and alleged

gang affiliation.[8] Doc. 15, att. 11, pp. 180–82. The petitioner claimed that he and McHale had

agreed that the petitioner would testify but that McHale changed his mind at some point during

trial and told the petitioner that "it was [McHale's] decision to make." *Id.* at 189–90.

Following the hearing, the trial court expressed skepticism over the petitioner's testimony

that he was unaware at trial that he had an absolute right to testify. Doc. 1, att. 4, p. 18. It also

found that the petitioner had failed to carry his burden of proving that McHale actually prevented

him from testifying:

> Mr. McHale's testimony is not as precise as, I guess, we would want. But
> he states that he had a discussion with Mr. Mincey whether or not he was
> going to testify; and then decided, after discussion with Mr. Mincey, [it]
> would not be in his best interest. And that decision was made after
> discussions with Mr. Mincey. . . . And there is a presumption that when a
> Defendant fails to testify that it was done in accordance with the law. That
> presumption has not been overcome.

*Id.* at 19–20. The Third Circuit upheld the trial court's finding and held that the petitioner had

failed to prove that McHale was otherwise ineffective for failing to have him testify. *Id.* at 32.

Courts within this circuit also assume that, in the absence of evidence in the trial record of

the defendant's wish to testify, the defendant has made an effective waiver of this right. *Jordan*,

34 F.3d at 315. Because credibility determinations are factual findings, they can only be overturned

by clear and convincing evidence. *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1041 (2003). McHale's

testimony was facially plausible and not contradicted by anything other than the petitioner's self-

serving account. We therefore find no grounds for rebutting the presumption of correctness due to

---

[8] At this hearing the state also introduced evidence of the petitioner's criminal history from Louisiana and California.
Doc. 15, att. 11, p. 201; *see* Doc. 15, att. 3, pp. 67–75 (criminal history documents for petitioner). The petitioner denies
the claim, drawn in part from his California rap sheet, that he was part of a gang. Doc. 15, att. 11, p. 192.

the trial court's determination. The petitioner's request for an evidentiary hearing on the issue is likewise unwarranted.[9]

The next question, then, is whether McHale's failure to call the petitioner as a witness, as a matter of strategy rather than as a denial of a constitutional right, amounted to ineffective assistance of counsel. *Cf. United States v. Mullins*, 315 F.3d 449, 453–54 (5th Cir. 2002).

The Fifth Circuit has repeatedly held that "there is a strong presumption that counsel's decision not to place a defendant on the stand was sound trial strategy." *Bower*, 497 F.3d at 473. The petitioner, however, claims that the decision to call him as a witness was deficient and prejudicial in many respects. He contends that recordings of his jail phone calls that were played at trial were prejudicial because of the language he used and that they were also misleading on the issue of whether he had purchased a gun upon arriving for his visit in Louisiana, shortly before the killing.[10] Doc. 15, att. 11, pp. 191–93. He also stated that his criminal history was insufficiently prejudicial to keep him from testifying as the gun charges related only to possession rather than use of a firearm. *Id.* at 193–94. He believes that, had he taken the stand, he would have been able to explain to the jury why he carried a gun for his own protection after growing up in a "gang-infested environment." *Id.* at 194. He also argues that his testimony was necessary to establish the element of self-defense by offering his own version of the altercation and the threat to his safety. Doc. 1, att. 2, p. 18.

Under the deferential standards applied to counsel's trial strategy, there is no basis for finding that the decision not to have the petitioner testify was deficient performance. McHale

---

[9] Such hearings are only justified where the petitioner failed to develop the factual basis of his claim in the state court proceedings and can excuse his failure to do so. *Williams v. Taylor*, 120 S.Ct. 1479, 1487 (2000). Here the petitioner was already granted a hearing on this claim and fails to allege any untapped sources of evidence on the issue, let alone explain his failure for exploring these. Accordingly, this request is denied.

[10] These recordings are discussed more fully under the petitioner's sixth claim, *infra*.

called the petitioner's mother and sister to give accounts for the defense of the altercation leading up to the shooting. In doing so, he succeeded in obtaining an acquittal of the charged offense of second degree murder by way of the manslaughter conviction. Though the petitioner contests the prejudicial effect of his criminal history and alleged gang affiliation, McHale's concerns seem well-founded given the necessity of establishing that the petitioner had either not been the aggressor or had withdrawn after initiating the conflict. LA. REV. STAT. § 14:21. Finally, as discussed *infra*, the trial court viewed the prejudicial impact of the recordings to be more weighted against the petitioner's mother. She would therefore be the best candidate to explain any misinterpretation of the conversation and had the opportunity to do so when she testified. Accordingly, the petitioner's claim does not satisfy the first prong of *Strickland* and offers no basis for federal habeas relief.

### 3. *The petitioner's right to effective assistance of counsel was denied when his trial counsel failed to protect his right to testify, present a defense, and have compulsory process for obtaining witnesses on his behalf.*

The petitioner next claims that he was denied the right to effective assistance of counsel by his trial counsel's alleged failures in three respects. The first two sub-parts of this claim are premised upon the fact that the petitioner did not testify on his own behalf. We incorporate the ruling under the previous claim, finding no deficiency in performance from this action, and proceed to the compulsory process issue.

As stated above, claims of ineffective assistance of counsel are evaluated under the standards of *Strickland* and reviewed as mixed questions of law and fact. Here the petitioner claims that he was denied compulsory process, a guarantee of criminal defendants under the Sixth and Fourteenth Amendments. However, he does not identify which witness he would have called or what this witness might have testified to. If he is referring to himself, then we have already

established that this was a matter of sound trial strategy and not deficient performance. If he is referring to another person, then he has failed to show sufficient prejudice by demonstrating the witness's availability and what he would have testified to. *Alexander v. McCotter*, 775 F.2d 595, 602–03 (5th Cir. 1985). Therefore he cannot meet *Strickland*'s second prong. Accordingly, neither permutation of this portion of the claim offers a basis for federal habeas relief.

### 4. *The petitioner's conviction was unconstitutional due to the allowance of non-unanimous verdicts in non-capital felony cases under LA. C. CRIM. P. art. 782(A).*

The petitioner claims that the non-unanimous conviction was a violation of his right to trial by jury under the Sixth and Fourteenth Amendments. U.S. CONST. amends. VI. Finding no dispute as to the facts in this case, we review the state court adjudication for contrariness to or unreasonable application of federal law.

LA. C. CR. P. art. 782(A) allows for conviction by a concurrence of at least ten jurors out of twelve in non-capital felony cases. The Supreme Court has ruled that the Sixth Amendment requires a unanimous verdict in federal criminal trials but not in state proceedings. *Apodaca v. Oregon*, 93 S.Ct. 1628 (1972); *Johnson v. Louisiana*, 92 S.Ct. 1620 (1972). The Court was divided on the issue, with Justice Powell's concurrence breaking the tie. 92 S.Ct. at 1635; *see McDonald v. City of Chicago, Ill.*, 130 S.Ct. 3020, 3035 n. 14 (2010) (summarizing the opinions). Since that time it has continued to endorse the principle of the unanimous conviction. *E.g.*, *United States v. Booker*, 125 S.Ct. 738, 753 (2005). However, it has repeatedly declined to grant certiorari to reconsider the constitutionality of non-unanimous verdicts in state proceedings. *See, e.g.*, *Barbour v. Louisiana*, 131 S.Ct. 1477 (2011); *Herrera v. Oregon*, 131 S.Ct. 904 (2011); *Jackson v. Louisiana*, 134 S.Ct. 1950 (2014). Therefore the law of *Johnson* and *Apodaca* remains settled, and the petitioner can claim no violation of federal law from his conviction under the provisions of Article 782(A). This claim thus offers no basis for habeas relief.

5. ***The petitioner received an illegal sentence under the former provisions of the habitual offender law.***

The petitioner next challenges that the trial court lacked the authority to impose a provision of hard labor under Louisiana's habitual offender law at the time he was sentenced.[11]

Claims arising from state sentencing decisions are cognizable under § 2254 if the sentence is "wholly unauthorized by law." *Haynes v. Butler*, 825 F.2d 921, 923–24 (5th Cir. 1987). Because there is no dispute as to the facts on the record, this claim is reviewed as a mixed question of law and fact. *Ornelas v. United States*, 116 S.Ct. 1657, 1662 (1996).

The Third Circuit found no merit to this claim. It reasoned that, even though the habitual offender statute did not include a hard labor specification, the provision was authorized by the petitioner's manslaughter conviction. Doc. 1, att. 4, p. 32 (citing *State v. Robinson*, 54 So.3d 1292 (La. Ct. App. 2d Cir. 2011) and *State v. Bruins*, 407 So.2d 685, 687 (La. 1981)).

As the Louisiana Supreme Court noted:

> It is not a crime to be an habitual offender. The statute increases the sentence for a recidivist. The penalty increase is computed by reference to the sentencing provisions of the underlying offense. Similarly, the conditions imposed on the sentence are those called for in the reference statute.

*Bruins*, 407 So.2d at 687. Under Louisiana law in place at the time of the petitioner's sentencing, manslaughter is punishable by imprisonment at hard labor. LA. REV. STAT. § 14:31(B). Accordingly, the hard labor provision was authorized and this claim offers no basis for federal habeas relief.

---

[11] *See* LA. REV. STAT. § 15:529.1(G), amended in 2010 to add hard labor as a condition of confinement for habitual offenders. 2010 La. Sess. Law Serv. Act 69 (S.B. 374) (WEST).

### 6.  *The trial court erred in admitting prejudicial telephone recordings into evidence.*

The petitioner next claims that the trial court erred when it admitted recordings of telephone calls he made from the Calcasieu Parish Correctional Center. Such a claim is cognizable on federal habeas review only if constitutional error is alleged. *See Fuller v. Johnson*, 114 F.3d 491, 498 (5th Cir. 1997). This can be accomplished by showing a violation of due process which is done by demonstrating that the evidence was "material in the sense of a crucial, critical, highly significant factor." *Panzavecchia v. Wainwright*, 658 F.2d 337, 340 (5th Cir. 1981). With no dispute as to the facts in the record, this claim is reviewed as a mixed question of law and fact. *Ornelas v. United States*, 116 S.Ct. at 1662 (1996).

The record before this court does not contain a transcript of the calls. The bench conference on their admissibility indicates that the petitioner, in conversations with his mother, discussed purchasing a gun, shooting the victim, and what he said to the body afterward. Doc. 15, att. 5, pp. 89–90. They also discussed the issue of self-defense in some form. *Id.* at 95–97. McHale objected to the recording's admission on the basis of relevance and the allegation that it was hearsay. *Id.* at 89. The court overruled him on these grounds and reviewed the tape outside of the presence of the jury to determine if its probative value outweighed any potential prejudice. *Id.* at 89–99. After this review it determined that the inflammatory nature of the calls impacted Bryant, the other person on the line, rather than the petitioner. *Id.* at 99. Accordingly, it deemed the recordings admissible. *Id.* at 100.

It is unclear from the Third Circuit's ruling on this claim whether it found the admission to be correct, insufficiently prejudicial, or both. Assuming *arguendo* that there was some error in the admission, the petitioner has failed to show that it was sufficiently prejudicial. The trial court expressed concern about the "inflammatory nature" of the tape but noted that it went "not towards

[the petitioner but] towards a witness that may be called." *Id.* at 99. This witness, Bryant, was discredited by her own admission on the stand that she had lied to the police in two of her three interviews. Doc. 15, att. 6, pp. 58, 72–76, 95. Thus, even though the petitioner relied on her testimony to help establish his claim of self-defense, he has not shown that any additional injury was so critical as to cause a due process violation. His claim that his own statements in the recording were prejudicial also falls short of constitutional injury as he maintains that they still supported his theory of self-defense and that it was primarily his language that was upsetting.[12] *See* Doc. 1, att. 2, pp. 40–41; Doc. 15, att. 11, pp. 191–93. Accordingly, this claim offers no basis for federal habeas relief.

### 7. *The cumulative effect of these errors denied the petitioner his right to a fundamentally fair adversarial proceeding.*

Finally, the petitioner alleges that the cumulative effect of the errors raised in this petition had the cumulative effect of denying him a fair trial, even if none may have been deemed an individual constitutional violation. However, this court has made no finding of error and has only assumed it *arguendo* in one claim. Operating under that assumption, we found no violation of the petitioner's right to a fair trial. Accordingly, we cannot find that the cumulative effect would be different. This claim thus offers no basis for federal habeas relief.

## IV.
### CONCLUSION

For the reasons stated above, the undersigned concludes that the petitioner is not entitled to federal habeas relief.

---

[12] During one of the hearings on his application for post-conviction relief, the petitioner also disputed his own statement from the recording that he had purchased a gun days before the shooting. Doc. 15, att. 11, p. 191. The prosecution mentioned this detail twice in its closing argument. Doc. 15, att. 6, pp. 112, 133. However, as the petitioner and his trial counsel concurred that the recorded statements supported his overall theory of the case, we cannot find the introduction of this fact to be prejudicial enough to amount to a due process violation.

Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir.  1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 26th day of January, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE